IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

LARRY MCDOUGALD,

    Plaintiff,

v.     Civil Action No. 1:16-cv-1554

QUAD/GRAPHICS, INC., *et al.*,

    Defendants.

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment.

Plaintiff Larry McDougald, an African-American, was jointly employed by Defendants Quad/Graphics, Inc., Quad/Graphics Marketing, LLC, and QG Printing II, LLC (collectively "Quad/Graphics") from January 2013 until his termination on March 3, 2015. Plaintiff worked as an Imaging Pre-Press Technician at a printing plant located in Manassas, Virginia, originally owned and operated by Vertis Communications, Inc. ("Vertis"), and later acquired in January 2013 by Quad/Graphics, a printing services provider.

Plaintiff's job duties entailed producing digital page files and creating physical "plates" which would then be used to

print images to client specifications.

Before working at the Manassas plant, Plaintiff had previously been employed by Vertis at a facility in Atlanta, Georgia. Plaintiff began working there in March 2008 and was ultimately laid off approximately one year later. After he was laid off from his position at the Georgia facility, Plaintiff received an e-mail from Mark Senavitis, who was employed by Vertis as the supervisor of the Pre-Press department at the Manassas Facility, inviting him to interview for a position at that facility. Plaintiff stated in his deposition that Mr. Senavitis was the individual who ultimately hired Plaintiff for the position in Virginia, and that they had a generally good working relationship before the Manassas facility was acquired by Quad/Graphics. Throughout the time Plaintiff was employed at the Manassas facility, he was directly supervised by Mr. Senavitis.

Plaintiff alleges that he received disparate treatment due to his race. Specifically, he alleges that his performance was more closely scrutinized than his Caucasian coworkers and that he was unfairly singled out for criticism and discipline. Plaintiff's employment was ultimately terminated on March 3, 2015, which he alleges was in retaliation for his expressed belief that he was being discriminated against on the basis of his race.

The record reflects that Plaintiff had a documented history of performance issues and discipline leading up to his termination. In the year preceding his termination, Plaintiff had been disciplined seven times. This included verbal warnings, written warnings, performance reviews, temporary disciplinary layoffs, and eventually a Last Chance Agreement signed by Plaintiff in November 2014. Plaintiff was placed on the Last Chance Agreement pursuant to Quad/Graphics' progressive discipline policy, after Plaintiff committed a production error that resulted in the erroneous production of 380,000 books and required the recreation of 26 plates. The Last Chance Agreement explained that Plaintiff "could be terminated [on the date of the Agreement] for performance issues . . ." but "[t]he Company has, however, agreed to give [Plaintiff] one last chance to successfully perform [his] job duties." It further stated that if Plaintiff continued to display substandard performance within 120 days of entering the Last Chance Agreement, he would be terminated immediately.

During the time Plaintiff was subject to the Last Chance Agreement, on February 24, 2015, an error was committed while Plaintiff was on shift during the processing of a printing job for the client Kroger (the "Kroger Error"). This error required the recreation of 9 plates. As a result of this error, a meeting was scheduled for March 2, 2015, between Plaintiff, Mr.

Senavitis, and a Ms. Linda Snider, the Human Resources Regional Manager. The intent of the meeting was to discuss the Kroger Error and to gather information for an investigation of the error. At the meeting, Plaintiff alleged that the Kroger Error had actually been caused by a coworker, Mr. Rothwell, who had worked the previous shift on the same job. Plaintiff alleged that, on his shift, he had merely continued processing the job which Mr. Rothwell had begun on the earlier shift.

According to Plaintiff, he also stated at the March 2 meeting that he believed he was being treated unequally and discriminatorily in the disciplinary and investigatory process, due to the fact that the responsibility for the Kroger Error lay with one or more of Plaintiff's Caucasian coworkers and yet none of them were called to account for it as he was. Plaintiff alleges that it was after he made this statement that Ms. Snider abruptly told Plaintiff he would be placed on suspension. Defendants do not contest the fact that Plaintiff was placed on suspension following the March 2 meeting, but they allege that the suspension was enacted pending review of Plaintiff's allegations regarding the Kroger Error.

According to Defendants, after the March 2 meeting, Ms. Snider conducted an investigation of the Kroger Error and determined that Plaintiff was at fault, not Mr. Rothwell. At that point, Ms. Snider moved forward with the finalization of

Plaintiff's termination pursuant to the Last Chance Agreement already in effect. Plaintiff's termination was effective March 3, 2015.

Plaintiff originally filed this action on December 14, 2016, and filed an Amended Complaint on June 8, 2017. In his Amended Complaint, Plaintiff asserted five counts: disparate treatment under Title VII, retaliation and retaliatory discharge under Title VII, disparate treatment and discharge under ADEA, disparate treatment pursuant to § 1981 of the Civil Rights Act of 1866, and retaliation pursuant to § 1981. Plaintiff later voluntarily dismissed the ADEA claim (Count III), leaving only the discrimination and retaliation claims brought under Title VII and § 1981. Defendants filed their Motion for Summary Judgment on November 1, 2017.

Under Federal Rule of Civil Procedure 56, a court should grant summary judgment if the pleadings and evidence show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made, the opposing party has the burden to show that a genuine dispute of

material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The Court finds there is no genuine dispute of material fact and this case is ripe for summary judgment.

Where a plaintiff does not have direct evidence to prove discrimination under Title VII, the Supreme Court has provided a burden-shifting framework to prove discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). The Fourth Circuit has held that this framework applies to § 1981 actions as well. Hawkins v. PepsiCo, Inc., 203 F.3d 274, 278 (4th Cir. 2000). Under that framework, the claimant bears the initial burden of establishing a prima facie case of racial discrimination. McDonnell, 411 U.S. at 802. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to demonstrate a legitimate, non-discriminatory reason for the adverse employment action. Id. The burden then shifts back to the plaintiff to prove that the defendant's stated reason is pretextual. Id. at 804.

To present a prima facie case of racial discrimination under Title VII, a plaintiff must prove: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) similarly situated employees outside the protected class received more favorable treatment. Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010).

The elements for a claim of discrimination under § 1981 are the same as the elements for a claim of discrimination under Title VII. Gairola v. Com. of Va. Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985). A plaintiff's self-serving statements without any corroborating evidence are not sufficient to establish a prima facie case of discrimination. See Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir. 2004).

Plaintiff has failed to meet his burden of establishing a prima facie case of race discrimination under either Title VII or § 1981. First, Plaintiff cannot overcome the strong inference against discriminatory animus created by the fact that Mr. Senavitis, the individual who allegedly discriminated against Plaintiff, was the same person who hired Plaintiff. The Fourth Circuit has recognized that a "powerful inference" against discriminatory animus exists where the alleged discriminator is the same person who hired the plaintiff. Evans v. Technologies Applications & Services Co., 80 F.3d 954, 959 (4th Cir. 1996) (citing Proud v. Stone, 945 F.2d 769, 798 (4th Cir. 1991)). Plaintiff has conceded that Mr. Senavitis hired him and supervised him throughout his employment with Quad/Graphics.

Second, Plaintiff cannot show disparate treatment, because the record demonstrates that Mr. Senavitis issued numerous corrective actions to Plaintiff's purported similarly situated co-workers. Despite Plaintiff's conclusory allegations that he

was unfairly singled out for criticism and punishment among his coworkers, the record contains ample evidence that Mr. Senavitis disciplined other employees and applied Quad/Graphics' performance standards fairly. For instance, on July 18, 2014, Mr. Senavitis disciplined both Plaintiff and Mr. Rothwell for their shared role in a performance-related matter. On January 17, 2014, the same day that Mr. Senavitis issued a written warning to Plaintiff for a performance issue, he issued a one-day disciplinary layoff for substandard performance to a Caucasian employee, Mr. Moszumanski. Mr. Moszumanski was also placed on a Last Chance Agreement similar to the one Plaintiff was placed on, and was ultimately terminated for commission of an error while subject to his Last Chance Agreement.

Because Plaintiff cannot demonstrate that similarly situated persons outside of his protected category were treated more favorably than he, he fails to establish a prima facie case of discrimination. Thus, summary judgment is warranted on the discrimination claims.

Plaintiff also fails to establish his Title VII and § 1981 retaliation claims. To establish a prima facie case of retaliation, the plaintiff must prove that: (1) he engaged in protected activity; (2) he suffered adverse action; and (3) there was a causal link between the two events. E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 405-06 (4th Cir. 2005).

Plaintiff cannot prove a prima facie case of retaliation. Plaintiff asserts he engaged in protected activity when, at the March 2 meeting with Ms. Snider and Mr. Senavitis, Plaintiff stated his subjective belief that he was being discriminated against on the basis of his race. Plaintiff also asserts that he was suspended and then terminated based on this statement. However, Plaintiff cannot demonstrate a causal connection between his statements and his termination.

Plaintiff's only evidence of a causal connection is the temporal proximity of his statements and the termination. However, this is insufficient to establish a causal connection because Plaintiff had already been subject to discipline, had previously demonstrated performance issues, and was subject to a Last Chance Agreement at the time of the meeting when he purportedly engaged in protected activity.

The existence of a prior and continuing pattern of performance issues and discipline predating the adverse action is highly relevant in determining whether there is a causal nexus between the protected activity and the adverse action. See Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001) (holding that where an adverse action was "part, and the ultimate product of 'an extensive period of progressive discipline'" which began "well before the plaintiff had ever engaged in any protected activity, an inference of retaliation

does not arise."). Accordingly, Plaintiff's Last Chance Agreement negates any inference of retaliation, because the Last Chance Agreement expressly stated that Plaintiff could have been terminated at the date of execution, and that he would be terminated immediately if any further performance issues arose during the designated period following execution. In essence, the termination process had already begun at the time of the March 2 meeting. Thus, Plaintiff fails to establish a prima facie case of retaliation, and summary judgment is warranted on his retaliation claims as well.

For the foregoing reasons, this Court finds that summary judgment should be granted in favor of Defendants. An appropriate order shall issue.

*Claude M. Hilton*
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
December _11_, 2017